IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3118-BO

| | |
|---|---|
| ISAAC LEE WOODS, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| COUNTY OF WILSON, et al., ) | |
| Defendants. ) | |

Isaac Lee Woods ("plaintiff") filed this action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). The matter was transferred from the United States District Court for the Middle District of North Carolina (D.E. # 4). Woods named at least 75 defendants, many of whom are not specifically identified, and he has made voluminous filings. On September 26, 2011, the court entered a detailed order granting motions to dismiss or alternatively for summary judgment for several named defendants and resolving 14 pending motions of Isaac Lee Woods (D.E. # 129 and 131). Now before the court is one pending motion to dismiss filed by "federal defendants" (D.E. # 84) pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6). Woods responded to the motion (D.E. # 99 and # 100), and the matter is ripe for determination.

Woods' allegations are difficult to follow. However, the court finds that he is arguing the following. On June 25, 2007, while being held at the Wilson County Detention Center, unknown staff identified as "Defendants" moved plaintiff to a cell where he was assaulted by another inmate. Specifically, the inmate hit Woods with a metal pole causing a left orbital fracture. Plaintiff next alleges he was transferred to the Wake County Jail by Deputy U.S. Marshals in a negligent manner

without being provided medical assistance. (D.E. # 2, ¶¶ 22-32). He was taken to the Wake County Jail and was left in conditions that he described as "an over crowded cell block." (D.E. #2, ¶¶ 32-37 and D.E. # 99, ¶ 8.)

On or about June 27, 2007, Woods was transported to Western Tidewater Regional Jail, wherein he alleges the denial of medical care while in transit. (D.E. #2, ¶¶ 38-43.) Woods later alleges that he was transported to Sentara Hospital, but was denied medical treatment at the order of unknown members of the United States Marshals Service. (D.E. #2, ¶¶ 45-60).

Later within the pleading, Woods alleges that he was denied medical treatment at the Federal Transfer Center in Oklahoma, Federal Medical Center (F.M.C.) Devens, Federal Medical Center (F.M.C.) Brooklyn, and Federal Correctional Institution (F.C.I) Morgantown. (D.E. # 2, ¶¶ 64-82).

In addition to these claims, Woods alleges prison officials would often search his belongings, including legal mail (D.E. #2, pp. 23-24 and 27-31); falsified incident reports (D.E. #2, pp. 24-26); denied him the ability to attend family funerals based on discriminatory motives (D.E. #2, p. 26); denied his transfer to Federal Prison Camp-Butner (D.E. #2, p. 32, D.E. # 99, ¶ 9); and denied him a reduction in custody level.

a.  Failure to Serve

Federal defendants argue that Woods' claims against defendants Deputy U.S. Marshal A through K, Nurse "A" Federal Transfer Center, Physical Assistance [sic] (at M.D.C. Brooklyn), Wayne Phillips, Ramos, and L. Wiles must be dismissed pursuant to Rule 12(b)(2) and 12(b)(5). Proper service of process (or waiver of service under Fed. R. Civ. P. 4(d)) is necessary for the court to exercise personal jurisdiction over a defendant. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). These defendants have not been served by Woods, nor have they been sufficiently identified.

2

A plaintiff "is responsible for having the summons and complaint served within the time allowed by [Federal Rule of Civil Procedure] 4(m) and must furnish the necessary copies to the person who makes service." Fed. R. Civ. P. 4(c)(1). At a plaintiff's request, "the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3). The court must grant such a request "if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915." See id.

"Rule 4(m) requires the district court to 'extend the time for service to an appropriate period' if there is 'good cause' for not serving the defendant 'within 120 days after the complaint is filed.'" Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010) (quoting Fed. R. Civ. P. 4(m)). The period of time after the plaintiff files his complaint but before the court conducts a review under 28 U.S.C. § 1915 "constitutes good cause requiring the 120-day period to be extended." Id.

Typically, the plaintiff must provide the necessary information and documentation to effect service. See, e.g., Puett v. Blanford, 912 F.2d 270, 275 (9th Cir. 1990). However, in the case of service on behalf of a prisoner pursuant to 28 U.S.C. § 1915(d), the statute "specifically vests the responsibility for service with the court and its officers." Jones v. Hashagen, 419 Fed. App'x 141, 145 (3d Cir. 2011) (per curiam) (unpublished); Olsen v. Mapes, 333 F.3d 1199, 1204 (10th Cir. 2003). Thus, under section 1915(d), "the prisoner need furnish no more than the information necessary to identify the defendant." Richardson v. Johnson, 598 F.3d 734, 739–40 (11th Cir. 2010); see Greene v. Holloway, 210 F.3d 361, 2000 WL 296314, at *1 (4th Cir. 2000) (unpublished table opinion).

On June 21, 2010, Woods filed this action. On December 10, 2010, the United States Marshal Service attempted service which was returned unexecuted. (D.E. # 11 and # 13). On August 3, 2011, the court sought additional information regarding these "named" defendants from

3

the United States Attorney. (D.E. #101) The Assistant United States Attorney filed a response and stated that no such information could be provided as to Deputy U.S. Marshal A through K, Nurse "A" Federal Transfer Center, and Physical Assistance [sic] (at M.D.C. Brooklyn), Wayne Phillips, Ramos, and L. Wiles. (D.E. # 104). The information was provided to the court in a sealed response per court order.[1] As such, the claims against defendants, Nurse "A" Federal Transfer Center, and Physical Assistance (at M.D.C. Brooklyn), Wayne Phillips, Ramos, and L. Wiles, are dismissed for lack of jurisdiction and insufficient service of process.

However, it appears to the court that Deputy U.S. Marshals A through K are deputy marshals within the Eastern District of North Carolina who transported Woods during the time in question. It also appears from the two pages of Western Tidewater Regional Jail medical records proffered by Woods, but redacted, that the name of at least one deputy who would not approve medical care is included within that record.

Accordingly, the court DIRECTS the United States Attorney for the Eastern District of North Carolina to determine whether it can identify, through the United States Marshals Service's transfer records, the medical summaries of federal prisoner/aliens in transit, and/or the holding jail's unredacted medical records, the names of the unknown deputies. The United States Attorney for the Eastern District of North Carolina is further DIRECTED to respond to this order on or before March 31, 2012, and to either provide a name and address for service on the deputies, under seal if necessary, or to indicate whether it will represent this defendants and accept service of the complaint on his or her behalf.

---

[1] The United States Attorney did proved the names and address of Joel Siegler and J.G. Esparza.

4

b.  Motion to Dismiss

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50.

i.  The Court Continues the Frivolity Review

The court "shall dismiss the case at any time if the court determines that - the action . . . is frivolous . . . or fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(I) and (ii). Thus, the court may continue to review the claims under the standards of Rule 12(b)(6).

a.  FTCA

It appears that Woods is asserting an FTCA claim. An FTCA must be brought against the United States of America. Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002); 28 U.S.C. §§ 1346(b), 2674, 2679 (proper party for a suit brought under the Federal Tort Claims Act is the United States of America.). Furthermore, Woods has not shown exhaustion as required by the statute. 28 U.S.C. § 2675(a); see Plyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990) (vacating judgment for

5

plaintiff because the requirements of section 2675(a) are jurisdictional and may not be waived). According to the statute, exhaustion of administrative remedies is necessary before bringing a Federal Torts claim to a federal district court for relief. McNeill v. United States, 508 U.S. 106, 110-113 (1993); Drew v. United States, 217 F.3d 193, 196-197 ("the FTCA prohibits the filing of a civil action against the Government unless the underlying claim is 'first presented' to the appropriate federal agency and subsequently denied."), aff'd en banc, 231 F.3d 927 (4th Cir. 2000). Therefore, Woods is ordered to provide the court with proof of exhaustion, because without such the court does not have jurisdiction to proceed. Drew, 217 F.3d at 196-197 (When a FTCA is not "first presented to the appropriate agency, the district court must, pursuant to Fed. R. Civ. P. 12(b)(1), dismiss the action for want of subject matter jurisdiction.") Thus, Woods must present to the court the resolution of the claim and subsequent right to sue letter.[2] Woods is allowed 20 days to file this proof of exhaustion with the court.

      b.     Joel Siegler and J.G. Esparza

While the court originally allowed the two named defendants, Joel Siegler and J.G. Esparza to proceed, the court shall review the claims as set out below although these defendants have not been properly served.

      ii.     Bivens

To establish an Eighth Amendment claim for denial of medical care, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need is "one that has been diagnosed

---

[2]The court recognized that Woods did present to the court the filing of his claim in his response to the federal defendants' motion to dismiss, but did not proffer the resolution of such. (D.E. # 100, Exhibit K-1).

by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotation omitted).

Deliberate indifference requires that a defendant knew of and purposefully ignored "an excessive risk to inmate health or safety . . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "[O]bduracy and wantonness, not inadvertence or error in good faith, . . . characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." Whitley v. Albers, 475 U.S. 312, 319 (1986). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241. "[T]o establish a claim of deliberate indifference to [a] medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

"In a Bivens suit, there is no respondeat superior liability. Instead, liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (citation omitted); Iqbal, 129 S. Ct. at 1949 ("In a . . . Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). The record before the court establishes no personal involvement in the decision regarding Woods health care decision by the federal defendants, with the exception of the deputy marshals as set out above. Section 1983 does not establish a system of vicarious responsibility. Iqbal, ___ U.S. at ___, 129 S. Ct. at 1948; see also Monell v. New York City Dep't of Social

7

Services, 436 U.S. 658, 691 (1978). Liability depends on each defendant's personal knowledge and actions, not on the knowledge or actions of others. Id.

Specifically, Woods' has failed to show, and the record is devoid of, any evidence the federal defendants had any role in the treatment decisions, except based on respondeat superior. Because the record shows no personal involvement in the medical decisions as they relate to Woods' health care the federal defendants, with the exception of the deputy marshals, cannot be held liable under Bivens. For clarification, the court holds that as to the deputy marshals given the records before the court, Woods has met his burden to state a claim under Rule 12(b)(6).

In defense of this complaint, Woods argues that the personal actions of the federal defendants is a conspiracy to intentionally deny or delay access to care for Woods' serious medical needs. Specifically, he argues that defendants' conspiracy is evidenced by Exhibit 2 of his response.

To establish a civil conspiracy, a plaintiff "must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right . . . ." Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996). Conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element and therefore fail to state a claim. See id. at 421–23. Rather a plaintiff "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Id. at 421. Woods fails to present sufficient allegations that would demonstrate a "meeting of the minds" between any defendants. Cf. Iqbal, 129 S. Ct. at 1949–52; Twombly, 550 U.S. at 555–56.

The court has reviewed Woods' Exhibit 2 which is attached to his response. It appears to be the Western Tidewater Regional Jail Medical Department medical notes. It appears to show that the jail was aware of the orbital fracture and the injury was taken seriously by medical staff. At one point

8

in the notes, on July 2, 2007, the need for a plastic surgeon and ophthalmology is noted and it states "will make appts." On the following day, the medial notes state "appt. with Dr. \_\_\_\_\_ [redacted] ophthalmology made." The record also shows that staff continually and quickly attempted to make the appointment for the plastic surgeon and scheduled it. The two pages of notes state that the "USMS Deputy from Raleigh" is the person who "would not approve any appointment to Plastic Surgeon or Ophthalmology unless life threatening!" (emphasis in original) Furthermore, from the records, it can be inferred that medical staff at the Tidewater Jail was concerned about this statement because a plastic surgeon stated that the definitive treatment needed to be done the week of July 9th for surgery to be effective. While Woods states his evidence is illustrative of a conspiracy, it is not. It appears to show that medical attention and concern was given to Woods by the medical staff a Tidewater Jail, not that there was a meeting of the minds to deprive him of his constitutionally protected right by federal defendants. Furthermore, wardens and medical personnel of federal facilities in different parts of the county clearly could not even be aware of these events, much less involved in some type of conspiracy as a result of them.

   iii. Mail

Woods argues that defendants have mishandled his legal mail. It is well established that an inmate has a right to reasonable access to state and federal courts and to communicate with attorneys. See, e.g., Ex Parte Hull, 312 U.S. 546, 549 (1941); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978) (per curiam). Legal mail generally may not be opened outside of the presence of the prisoner-addressee. Wolff v. McDonnell, 418 U.S. 539, 578 (1974). However, in order to state a claim for denial of access to the courts, the inmate must show actual injury or that defendants' conduct hindered his efforts to pursue a legal claim or show actual harm by the opening. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–54 (1996); Michau v. Charleston County,

9

434 F.3d 725, 728 (4th Cir. 2006); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc); American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785-86 (4th Cir. 1993). Further, isolated incidents without negative consequences to plaintiff do not constitute a constitutional deprivation of one's rights. See, e.g., Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (occasional accidental opening of legal mail does not state of claim of the denial of one's right to the access of court). "[P]rison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action." Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998). In order to show actual injury, "a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Id. at 1290-91 (citations omitted).

Woods has failed to show any harm to any legal matters because of the alleged mail incident or incidents regarding his legal mail. Furthermore, Woods only makes a blanket assertion from which this information can be surmised. There is no actual evidence that Woods in fact has had legal mail confiscated and certainly no indication that any injury has resulted.

  iv. Custody Classification and Transfer

Woods does not a have constitutional right to custody classification or a transfer. See Sandin v. Connor, 515 U.S. 472, 485-86 (1995); Olim v. Wakinekona, 461 U.S. 238, 245 46 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976); Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999); See O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991). Furthermore, the failure to follow prison procedures and regulations for a transfer is insufficient without additional facts to establish a constitutional violation. See Edwards v. Johnson, 209 F.3d 772, 779 (5th Cir. 2000). Thus, Woods claims raising the same are meritless.

10

v.  Funeral Attendance

To the extent that Woods asserts a claim based on his on ability to attend a funeral, he fails to state a claim for which relief may be granted because he cannot establish the existence of a constitutional right. See Wilson v. East Carroll Detention Center, 2012 WL 602171, *2 (W.D. La. 2012) (unpublished); Butler v. Snyder, 106 F. Supp.2d 589 (D. Del. 2000); Verrone v. Jacobson, No. 95 CIV. 10495 (LAP), 1999 WL 163197, at *5 (S.D.N.Y.1999) (noting that "a prisoner does not have a protected right to attend the funeral of a relative"); Green v. Coughlin, 1995 WL 498808, at *1 (S.D.N.Y. Aug. 22, 1995) ("Generally, prison inmates do not have a constitutionally protected right under § 1983 to attend a funeral ..."); Colon v. Sullivan, 681 F. Supp. 222, 223 (S.D.N.Y.1988) (holding that denying a prisoner the opportunity to attend a relative's funeral does not violate a constitutionally protected liberty interest); Mercer v. Green Haven Correctional Facility, 1998 WL 85734 (S.D.N.Y.,1998).

Woods also claims that the refusal to allow his attendance at a funeral was done as a discriminatory act. Woods does not allege any discriminatory purpose or intent in his complaint, other than his general allegations. See Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 470 (2d Cir. 2006) (in order to establish equal protection claim, plaintiff was required to show that defendant "intentionally discriminated against her, either by adopting out of racial animus policies which are facially neutral but have a racially discriminatory effect, or by applying a facially neutral policy in a racially discriminatory manner"). "Conclusory allegation[s] of discrimination," "without evidentiary support or allegations of particularized incidents" and absent allegations of discriminatory intent, do "not state a valid claim and so cannot withstand a motion to dismiss." See id. (internal quotations omitted) Thus, the claim fails.

11

vi. Disciplinary reports

Woods claims that incident reports were somehow falsified by D. Shaw and Paul Edwards. (D.E. # 2, p. 24-26) Claims regarding disciplinary procedure are not actionable without a loss of good time credit. Wolff v. McDonnell, 418 U.S. 539, 565-66 (1974) (In a prison disciplinary hearing which results in the loss of good time credits, the procedural due process safeguards are: (1) written notice of the charges; (2) a written statement by the factfinder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so.) There was no loss of good time credit alleged, just loss of earnings and loss of commissary, and as such are not cognizable under Bivens. (D.E. # 2, P. 25, ¶ 15). Furthermore, the claims do not contain facts about the incident, such as the incident itself, the infraction itself, or the date and time it occurred. The claim is meritless.

vii. Other claims not specifically discussed

If Woods is attempting to raise other claims, these issues are dismissed against all defendants. This is because of the blanket nature of assertions Woods makes about general malfeasance. A complaint must contain factual allegations, otherwise the claim is nothing more than a bare assertion. Such conclusory allegations are insufficient to state a constitutional claim. White v. White, 886 F.2d 721, 723 (4th Cir.1989).

c. Conclusion

As set out above, the federal defendants' motion to dismiss is ALLOWED with exception. (D.E. # 84) First, the United States Attorney for the Eastern District of North Carolina is DIRECTED to determine whether it can identify, through the United States Marshals Service's transfer records, the medical summaries of federal prisoner/aliens in transit, and/or the holding

jail's unredacted medical records, the names of the unknown deputies. The United States Attorney for the Eastern District of North Carolina is further DIRECTED to respond to this order on or before March 31, 2012, and to either provide a name and address for service on the deputies, under seal if necessary, or to indicate whether it will represent this defendants and accept service of the complaint on his or her behalf. Second, Woods must provide proof of exhaustion of his FTCA claims through the submission of his right to sue letter. He is ALLOWED 20 days to file this proof of exhaustion.

SO ORDERED, this the __7__ day of March 2012.

*Terrence W. Boyle*
TERRENCE W. BOYLE
United States District Judge

13